(No. 6832.   October 23, 1940.)

P. A. DUFRENSE, Appellant, v. OTTO A. HAMMER-
STEN and Mrs. FRANCES HAMMERSTEN, Hus-
band and Wife, Respondents.

[106 Pac. (2d) 861.]

P. C. O'Malley, for Appellant.

Carl C. Christensen, for Respondents.

AILSHIE, C. J.—During the summer of 1928 appellant loaned respondents the sum of $428 to pay for the completion of a house. Respondents gave appellant their note, bearing ten per cent (10%) interest and due in three years from date. Interest was paid regularly on the note to and beyond the time of its maturity. December 8, 1935, at appellant's instance and request, respondents executed a note in lieu of the 1928 note, for the same amount of principal and bearing interest at the same rate, payable to appellant three years after date. Interest on the second note (at 10%) in the amount of $122.80 was paid up to December 8, 1938, and $28 on the principal, leaving a balance due on the principal of

$400. From the above facts agreed upon between the parties, appellant claims he is entitled to payment of the principal in full and all interest accrued subsequent to December 8, 1938, at 10 per cent per annum, together with an attorney fee, the latter to be fixed and determined by the court.

Respondents claim they are entitled to an offset of $122.80, interest paid, and an additional $245.60 (which is "twice the amount of such interest", as penalty, for usurious contract, in accordance with 1933 Sess. Laws, chap. 197, sec. 3), leaving a balance of $31.60, together with a $15 attorney fee allowed by the court. It was agreed between the parties that the court consider and decide the issues presented upon the stipulated facts without other evidence or calling a jury. By the lower court's memorandum decision it was held that the only question involved is "whether or not the transaction in question is usurious and is governed by the provisions of Chapter 197 of the 1933 Session Laws". When the original note was executed in 1928 interest at 10 per cent per annum was legal but the rate was changed in 1933 and 8 per cent was fixed as the maximum rate allowable. Ten per cent was a usurious rate when the renewal note was executed. Judgment was entered that plaintiff recover from defendant the sum of $31.60 principal, without any interest save such as may accrue after judgment, and $15 attorney's fees. From this judgment plaintiff has appealed.

Under the statute, sec. 5–238, I. C. A. (as amended in 1923, 1923 Sess. Laws, chap. 49, sec. 1):

"Any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt."

(*Vollmer Clearwater Co., Ltd., v. Hines,* 49 Ida. 563, 290 Pac. 397.) So it appears that at the time the new note was given, the statute of limitations had not run against the old indebtedness; neither had the statute run against the second or new note at the time this action was commenced. While the suit is prosecuted on the renewal note, the plaintiff also plead the execution and delivery of the original note, payments of interest and the execution and delivery of the new or renewal note, for the same principal sum at the same rate of interest,

to take the place of the old one and extending the maturity date for a further period of three years.

As we understand the case of *Cain v. Bonner*, 108 Tex. 399, 194 S. W. 1098, 3 A. L. R. 874, on the authority of which the trial court rested his conclusion, the decision is predicated upon the proposition that,

"A creditor cannot plead a *usurious renewal* of a contract for the purpose of *avoiding* the *bar of the Statute of Limitations* against the original contract, and not be bound by its *usurious* character." (Italics supplied.)

That is what was sought to be done in the Cain-Bonner case. Such is not the case here. Indeed, the statute of limitations is not plead and, moreover, it affirmatively appears that the statute had not run against either the original or the renewal note. The new note in this case was simply a renewal and not a new and independent contract. No additional consideration passed; the only change made was naming a new maturity date.

A "renewal" of a promissory note means to *reestablish* a particular contract for another period of time. (*Grace & Co. v. Strickland*, 188 N. C. 369, 124 S. E. 856, 35 A. L. R. 1296; *Live Stock Nat. Bank, etc., v. Minnehaha St. Bank, etc.*, 52 S. D. 172, 217 N. W. 180, 183; *Lowry Nat. Bank v. Fickett*, 122 Ga. 489, 50 S. E. 396; *Kedey v. Petty*, 153 Ind. 179, 54 N. E. 798, 800; *Elk Horn Bank & T. Co. v. Spraggins*, 182 Ark. 27, 30 S. W. (2d) 858; *Sammons v. Nabers*, 186 Ga. 161, 197 S. E. 284; 10 C. J. S., p. 758, sec. 263, n. 19; 8 C. J., p. 425, sec. 626, n. 11; 66 C. J., pp. 174, 175, sec. 65; 7 Am. Jur., p. 941, sec. 248.)

In the Cain-Bonner case, *supra*, relied upon by respondents, the court stated the prevailing rule that,

"A contract, originally valid, is not rendered invalid by a subsequent agreement. It is therefore recognized that antecedent indebtedness is not affected by subsequent usurious renewals or extensions where the transactions are distinct. . . . . This simply means that the holder of an indebtedness is not obliged to declare upon a contract of renewal accepted in payment of the debt; that such a usurious renewal is no defense to an originally valid debt; and that the holder of such a debt may declare, and, where not subject to other de-

fenses, recover upon it, notwithstanding the usurious renewal.''

Clearly there was no corrupt intent in this transaction to circumvent the law and charge a usurious rate of interest. (*Anderson v. Creamery Package Mfg. Co.*, 8 Ida. 200, 67 Pac. 493, 101 Am. St. 188, 56 L. R. A. 554; *Olson v. Caufield*, 32 Ida. 308, 182 Pac. 527; *Easton v. Butterfield Live Stock Co.*, 48 Ida. 153, 279 Pac. 716; *Stinson v. Bisbee*, 55 Ida. 38, 37 Pac. (2d) 236; *Equitable Trust Co. v. A. C. White Lumber Co.*, 41 Fed. (2d) 60, 66.)

The judgment is reversed and the cause is remanded to the trial court with direction to enter judgment in favor of the plaintiff for the principal and interest accrued on the renewal note.    Costs of appeal awarded to appellant.

Budge, Givens and Holden, JJ., concur.

MORGAN, J., Dissenting.—The authorities cited in the foregoing opinion, commencing with *Grace & Co. v. Strickland*, 188 N. C. 369, 124 S. E. 856, 35 A. L. R. 1296, and ending with 7 Am. Jur., page 941, section 248, except 66 C. J. 174, 175, section 65, do not treat of usury, and have, at most, a very indirect bearing on the subject under consideration here.    66 C. J., pages 174, 175, treats of usury and is as follows:

''It may be stated generally that the elements of usury consist of: (1) An unlawful intent.    (2) Money or money's equivalent.    (3) A loan or forbearance.    (4) An understanding that the loan shall or may be returned.    (5) The exaction for the use of the loan of something in excess of what is allowed by law.    To determine whether all these requisites are present, the court will disregard the form which the transaction may take, and look only to its substance, and if all the requisites are present, the transaction will be condemned as usurious, whatever form it may assume and despite any disguise it may wear, but if any one of these requisites is lacking, the transaction is not usurious, although it may bear the outward marks of usury.''

That text does not support the foregoing opinion, but is to the contrary.

It is said in 66 C. J., 180, section 73:

"Since the purpose of usury statutes is to prevent excessive charges for the use of money, they apply only to those contracts that in substance involve a loan of money or forbearance to collect money due."

A renewal of a promissory note does not create a new indebtedness. In this case the contract sued on is a promissory note, not given to evidence an agreement to pay a loan made at the time it was executed, but to evidence an agreement of forbearance, for a time, to collect money then due.

When the original indebtedness from respondents to appellant was incurred, and the note was given to evidence the agreement to repay it was executed and delivered, ten *per centum* per annum was the maximum rate of interest which parties might agree in writing to pay. March 13, 1933, the legislature amended I. C. A., section 26–1905, which fixed the maximum rate of interest, and caused it to provide:

"MAXIMUM RATE OF INTEREST.—Parties may agree in writing for the payment of any rate of interest, on money due or to become due on any contract, not to exceed the sum of * *eight* per cent per annum; . . . . " (Sess. L. 1933, 391.)

At the time the indebtedness was incurred the maximum rate of interest, by written contract, in Idaho, was ten *per centum* per annum. At the time the note sued on was executed it was eight *per centum* per annum. Both the original note and the one sued on, called for interest at the rate of ten *per centum* per annum. The first note was not in violation of the law; the second violated the law and the public policy of the state limiting the rate of interest to be charged, collected and received.

The 1933 act of the legislature also amended section 26–1907, defining usury, as follows:

"USURY.—The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, shall be deemed a forfeiture *by the person so taking, receiving, reserving or charging to the benefit of the person paying or being charged,* of the entire interest which the contract carries with it or which has been agreed to be paid thereon, *plus twice the amount of such interest.* In case the greater rate of interest has been paid, the person

by whom it has been paid, or his legal representatives, may recover back the amount of the interest thus paid from the person taking or receiving the same, *plus twice the amount of such interest in addition.* No indorsee in due course of negotiable paper is affected by any usury exacted by any former holder of such paper unless he have actual notice of the usury previous to his purchase." (Italics indicate amendatory matter.)

The record in this case shows appellant, after the statute prohibiting the collection of interest in excess of eight *per centum* per annum became effective, took the promissory note sued on, given in consideration of his forbearance to sue on the original note, and, knowingly, charged, took and received ten *per centum* interest, per annum, on the principal of respondents' indebtedness to him.

The judgment should be affirmed.