(No. 6114.   October 23, 1934.)

ALVENA STINSON, Respondent, v. CLARENCE E. BIS-
BEE and JESSIE ROBINSON BISBEE, Husband and
Wife, Appellants.

[37 Pac. (2d) 236.]

J. H. Barnes, for Appellants.

Turner K. Hackman, for Respondent.

BUDGE, C. J.—Alvena Stinson, assignee of C. H. Stinson, instituted this action to foreclose a real estate mortgage given to secure the payment of a promissory note in the principal sum of $1,500, payable three years after date, with interest at the rate of ten per cent per annum, dated December 28, 1926, and made and executed by appellants as renewals of a note and mortgage in like amounts and with like terms, dated November 21, 1923, which evidenced and secured a loan of $1,500, made by C. H. Stinson, since deceased, to appellants. Defendants Bisbee affirmatively alleged in their answer that they had paid compound interest to plaintiff's assignor; that they had never agreed in writing for the payment of compound interest upon said loan; and that the exaction thereof was the taking, receiving and retaining, with knowledge and intent on the part of Charles H. Stinson, of a greater rate of interest than is allowed by law. The evidence is without conflict to the effect that it was appellants' custom to make interest payments due upon the note by check. On some nine occasions, occurring at intervals during the entire loan term, appellants in addition to the interest payments gave to C. H. Stinson checks for small sums ranging in size from fifty cents to six dollars and five cents, amounting in all to the sum of $25.20. These checks had written thereon the notation that they were for compound interest or for the use of delinquent interest, appellants testifying that these notations were on the checks when delivered to C. H. Stinson. These checks were accepted and cashed by C. H. Stinson or by Mrs. Stinson. From a judgment in favor of plaintiff, defendants appeal.

A determination of the question of whether, in the absence of a written agreement for compound interest (I. C. A., sec. 26-1906) there was such a taking, receiving, reserving or charging a rate of interest greater than is allowed by law within the meaning of I. C. A., section 26-1907, as to render the transaction subject to the consequences of usury prescribed by I. C. A., section 26-1907, answers all of appellants' assignments of error.

I. C. A., section 26-1907, provides that:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, shall be deemed a forfeiture of the entire interest which the contract carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back the amount of the interest thus paid from the person taking or receiving the same. . . . . "

The case before us appears to be rightly governed by the rule which finds support in many cases that: A contract which, in its inception is unaffected by usury, is not invalidated by any subsequent usurious transaction, and that usury payments made under a subsequent usurious transaction should be applied on the original indebtedness. The rule is stated in 66 C. J., section 194, page 243, as follows:

"A contract not tainted with usury in its inception will not be affected by subsequent usurious transactions in connection therewith, such as payments on account of interest in excess of the legal rate, or contracts to make such payments. In order to render the transaction subject to the consequences of usury because of usury it must have been so tainted in its inception, although such illegal payments or contracts to pay may well be usurious and void or unenforceable in themselves. Usury payments made will be applied on the original indebtedness."

"A contract which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction. *O. A. Graybeal Co. v. Cook,* 111 Cal. App. 518, 295

Pac. 1088; *Sharp v. Mortgage Security Corporation of America,* 215 Cal. 287, 9 Pac. (2d) 819.'' (*Penziner v. West American Finance Co.,* (Cal. App.) 14 Pac. (2d) 810.)

''If, in its inception, the contract which the instrument purported to evidence was unaffected by usury, it was not invalidated by a subsequent transaction. *Nichols v. Fearson,* 7 Pet. 103, 8 L. Ed. 623.'' (*Huntsman v. Longwell,* 4 Fed. (2d) 105.)

See, also, to like effect: *Read v. Flaketown Graphite Co.,* 206 Ala. 611, 91 So. 258; *Walter v. Adams,* 138 Ark. 411, 211 S. W. 365; *Guaranty Inv. Co. v. Stevens,* 161 Miss. 473, 137 So. 335; *Spalding v. Steelman,* 111 N. J. Eq. 1, 160 Atl. 836; *Lake Street Sash & Door Co. v. Verin,* 169 Minn. 332, 211 N. W. 161; *Sharp v. Mortgage Security Corporation of America,* 215 Cal. 287, 9 Pac. (2d) 819; *Nichols v. Fearson,* 7 Pet. 103, 8 L. ed. 623; 27 R. C. L. 248.

Neither the note nor the mortgage sought to be foreclosed, nor the note and mortgage of which they are renewals, are usurious. The contract does not disclose upon its face that it was intended that it would result in producing to C. H. Stinson a rate of return greater than that allowed by law, the contract providing only for interest at the rate of ten per cent per annum and the statute in force at the inception of and during the term of the contract providing that ''parties may agree in writing for the payment of any rate of interest, on money due or to become due on any contract, not to exceed the sum of ten per cent per annum;''. (C. S., sec. 2552; I. C. A., sec. 26–1905.) The note and mortgage contracts are further purged of any question of usurious taint at their inception by the testimony of C. E. Bisbee, one of appellants, since, when specifically asked with regard to each check urged to evidence a payment of compound interest, the witness testified that nothing was said between himself and Mr. Stinson about giving such checks either at or prior to the time they were given by Bisbee to Stinson. The whole matter is summed up in Mr. Bisbee's statement that the checks were ''Just all the same; I paid it and never thought anything about it.'' The evi-

dence discloses nothing more than a possible custom on the part of appellants of paying compound interest to C. H. Stinson without any request therefor at any time from him. Appellants not only showed this custom of paying compound interest to Mr. Stinson but in addition made an offer of proof to show that payments of compound interest to other parties had been their custom or course of action extending over several years, counsel for appellants stating, "We would like to show by this witness they had made a practice of making such payments in good faith to other people." There was sufficient evidence for the court to find as it did that there was no usury in the contract in its inception. The judgment of the trial court was that compound interest paid should be deducted from the principal sum of the original obligation. The judgment is affirmed, with costs to respondent.

Morgan and Holden, JJ., concur.

Givens, J., concurs in the conclusion reached.

Wernette, J., dissents.